<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>

File Name: 15a0580n.06

Case No. 14-3788

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES DEAN, JR., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| F.P. ALLEGA CONCRETE | ) | OHIO |
| CONSTRUCTION CORP., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**FILED**
Aug 14, 2015
DEBORAH S. HUNT, Clerk

BEFORE: NORRIS, SUTTON, and DONALD, Circuit Judges.

SUTTON, Circuit Judge. James Dean worked, among other jobs, as a laborer for Allega Concrete until the company laid him off during a reduction in force. Dean filed this lawsuit in response. He did not challenge the layoff; he claimed that his employer had failed to pay him overtime wages and a minimum wage in violation of state law and the Fair Labor Standards Act. 29 U.S.C. §§ 206–207. The district court rejected most of Dean's claims as a matter of law. The jury granted him $117 in relief on one claim. And the court awarded him $25,422 in attorney's fees. Allega appeals the fee award but not the damages award. Because the district court failed to explain the basis for such a large fee award in connection with such a small merits victory, we reverse the fee award.

Case No. 14-3788, *Dean v. F.P. Allega Concrete Construction Corp.*

Dean's lawsuit claimed that Allega adopted a complex strategy to short him overtime: paying him double for half his overtime hours, not paying him at all for the other half, and thus effectively paying him a regular hourly wage for all of his overtime hours. Dean also claimed that Allega failed to pay him for time spent loading trucks each morning and returning them each night. All told, Dean sought $29,659 in back pay.

The district court found that most of Dean's claims were without cause as a matter of law. It granted a directed verdict for Allega on three of Dean's claims: an Ohio state-law claim, promissory estoppel, and unjust enrichment. The jury also found that the remaining claim—the FLSA overtime claim—was largely without merit. It rejected his underlying theory but did award him $58.50 in overtime due to a bookkeeping error with respect to one day's paycheck. The district court entered judgment for Dean on this one issue and awarded an additional $58.50 in liquidated damages under the FLSA, 29 U.S.C. § 216(b), bringing the total award to $117.

Dean moved for $36,795 in attorney's fees based on roughly 130 hours of work and a rate of $275 an hour. *See id*. As to the hours worked, the district court said only that they were "neither excessive nor inefficient." *See Dean v. F.P. Allega Concrete Constr. Corp.*, No. 1:13-CV-962, 2014 WL 3547149, at *3 (N.D. Ohio July 16, 2014). As to the rate, the court dropped it to $190 per hour to reflect the relevant market rate and the attorney's limited experience. *Id.* at *2. The result: a $25,422 fee award, which is more than 217 times the size of the damages award. Allega appeals the fee award.

A few basics are in order. The district court had ample authority to grant *some* fees for Dean's victory, small though it was. *See* 29 U.S.C. § 216(b); *United Slate Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984). In determining the amount of any award under the FLSA, courts start with the lodestar amount: the number of

Case No. 14-3788, *Dean v. F.P. Allega Concrete Construction Corp.*

hours worked times a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This calculation "does not end the inquiry," however. *Id.* at 434. A district court also must look to "other considerations that may lead the district court to adjust the fee upward or downward"—"the most critical factor" of which "is the degree of success obtained." *Id.* at 434, 436. Last of all, we give considerable deference to the district court in reviewing the size of any award. Trial courts have a "superior understanding of the litigation," *id.* at 437, such awards are "predominately fact-driven," *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008), and it does more harm than good to engage in "appellate micromanagement" of fee awards, *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

All of this creates considerable inertia in favor of upholding fee awards. But there are two problems with this award, problems that, even under the most modest level of scrutiny, we cannot overlook. *First*, the court failed to consider the relationship between the fee award and the level of success obtained, as *Hensley* requires. A court must provide "a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437. And "[w]hen an adjustment is requested on the basis of . . . [the] limited nature of the relief obtained by the plaintiff"—as Allega requested here—the court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* Nothing in the district court's opinion, or for that matter the record below, offers any indication that the court considered the relationship between the fees awarded and the results obtained. That lack of explanation is an abuse of discretion and by itself requires vacating the award. *See Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992).

*Second*, the court made no adjustment to the fees based on Dean's limited—indeed near zero—success. This was a case about money, and Dean received little money. As the Supreme

Case No. 14-3788, *Dean v. F.P. Allega Concrete Construction Corp.*

Court tells us, a district court must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. The relief obtained was minute: $117. The hours expended were not: 133.8. Perhaps if Dean's suit had "vindicat[ed] . . . congressionally identified policies and rights," *Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994), the number of hours spent in this litigation would have been reasonable. But the jury rejected Dean's entire theory of the case and granted relief due only to an exceedingly minor bookkeeping mistake—which by itself would never have triggered a lawsuit. It is a heavy lift to say that this lawsuit vindicated the broader purposes of the FLSA. *See United Slate*, 732 F.2d at 501–02.

Dean offers three responses, but each misses the mark. Dean fears that any disturbance of the fee award would require a fixed proportionality analysis that mathematically links the fee award to the damages award. But nothing of the sort is required. What is required is that the district court offer a reasoned explanation that justifies the award and accounts for Dean's modest degree of success. Dean's case citations hold nothing to the contrary. They uphold fee awards that are a far cry from the fee awarded here and that *did consider* the degree of success obtained. *See, e.g.*, *Fegley*, 19 F.3d at 1135 (upholding $40,000 in fees for $7,680 recovery).

Dean adds that, because his "successful" FLSA claim was related to the three other claims, he may recover the entire cost of litigating the case. *Hensley* says otherwise. The lodestar method may result in "an excessive amount . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . Again, the most critical factor [in adjusting the lodestar result] is the degree of success obtained." *Hensley*, 461 U.S. at 436.

Dean submits that Allega "waived" its objections to the fee award by failing to raise them before the district court. No such waiver—in truth no such forfeiture, *see United States v. Olano*,

Case No. 14-3788, *Dean v. F.P. Allega Concrete Construction Corp.*

507 U.S. 725, 733 (1993)—occurred.  Throughout its district court brief, Allega emphasized that Dean did not deserve any fees at all because he proved nothing but a clerical error.  Allega argued that "[t]he complete lack of evidence clearly distinguishes this case" from others awarding fully compensatory fees.  R. 31 at 3.  "[A]n award of any significance," Allega concluded, "is contrary to equity and the spirit of the statute."  *Id.* at 5.  Allegra did not forfeit its challenge to the fee award.

For these reasons, we reverse the fee award and remand for further proceedings not inconsistent with this opinion.

Case No. 14-3788, *Dean v. F.P. Allega Concrete Construction Corp.*

**BERNICE BOUIE DONALD, Circuit Judge, concurring only in the judgment.**  I agree with the majority that the district court must support its fee calculation to enable review, and for that reason, I concur in the majority's judgment.  However, I have reservations regarding the majority's articulation of existing law regarding fee awards under the FLSA, because I believe the lodestar approach used by the court in calculating fees is presumptively reasonable.

The FLSA and its kin among civil rights laws are not average statutes.  It is well known that parties typically pay their own attorney fees in the U.S. court system.  *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  However, in certain "fee-shifting" statutes, Congress expressly permits—and sometimes requires—that a prevailing plaintiff recover reasonable attorney fees from his opponent for successful litigation under the statute.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).  Congress includes such provisions to ensure that even the most vulnerable plaintiffs are able to enforce certain essential statutory rights.  Shifting the cost of litigation not only emphasizes the importance of these rights—here, fair payment for hours worked—but also reflects the unfortunate reality that many plaintiffs seeking to enforce these rights often lack the power and means to do so.  *Id*.  The FLSA is one of these far-from-ordinary statutes:  its text directs that a court "shall" award attorney fees to a successful plaintiff.  29 U.S.C. § 216(b).

The majority fails to recognize this mandate.  We have expressly held that "[a]n award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory[.]"  *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994); *see also United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co*., 732 F.2d 495, 501 (6th Cir. 1984).  While the amount of fees awarded to the plaintiff remains within the district court's discretion, a court that refuses to award any fees to a successful

Case No. 14-3788, *Dean v. F.P. Allega Concrete Construction Corp.*

plaintiff contradicts the plain language of the statute.[1]  *Fegley*, 19 F.3d at 1134; 29 U.S.C. § 216(b).  If anything, *failing* to award fees would be an abuse of discretion, because it flatly contradicts the law.

The majority instead focuses on another aspect of the FLSA fees requirement: that the amount awarded be reasonable.  We have held that "reasonable" fees in the FLSA context are those that are adequate to attract competent counsel, but which do not produce a windfall for the attorney.  *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)).  This definition reflects the policy supporting fee awards in civil rights cases: access to the courts for plaintiffs who might otherwise not be able to engage an attorney on their behalf.  There are two possible approaches to calculating a "reasonable" fee in the FLSA context.

The opinion in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), presents one approach.  In that case, the Fifth Circuit addressed whether a district court had appropriately calculated the attorney fees it awarded to a plaintiff.  Because the district court "judgment d[id] not elucidate the factors which contributed to the decision and upon which it was based[,]" the Court of Appeals identified twelve factors to guide its reconsideration on remand:  1) the time and labor required; 2) the novelty and difficulty of the legal questions; 3) the skill requisite to perform the legal service properly; 4) preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee was fixed or contingent; 7) the time limitations imposed by the client or circumstances; 8) the amount

---

[1] The U.S. District Court for the Northern District of Ohio, which heard this case below, has consistently observed this rule.  *See, e.g.*, *Gomez v. ERMC Prop. Mgmt. Co., LLC*, No. 3:13-CV-01081, 2014 WL 3053210, at *2 (N.D. Ohio July 7, 2014); *Snide v. Disc. Drug Mart, Inc.*, No. 1:11 CV 00244, 2013 WL 6145130, at *4 (N.D. Ohio Nov. 21, 2013); *White v. All About Cable Connections, LLC*, No. 1:12CV1708, 2013 WL 2949920, at *3 (N.D. Ohio June 13, 2013); *Abdelkhaleq v. Precision Door of Akron*, No. 5:07 CV 3585, 2010 WL 395236, at *6 (N.D. Ohio Jan. 25, 2010).

Case No. 14-3788, *Dean v. F.P. Allega Concrete Construction Corp.*

involved and results obtained; 9) the experience, reputation, and ability of the attorney; 10) the

undesirability of the case; 11) the nature and length of the professional relationship with the

client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

The more common approach is the "lodestar" method, in which the court determines a

reasonable hourly rate for the jurisdiction of the case and multiplies that rate by the reasonable

number of hours counsel dedicated to the case. The Supreme Court favors this method over the

*Johnson* approach, for several reasons:

> First, in accordance with our understanding of the aim of fee-
> shifting statutes, the lodestar looks to the prevailing market rates in
> the relevant community. Developed after the practice of hourly
> billing had become widespread, the lodestar method produces an
> award that *roughly* approximates the fee that the prevailing
> attorney would have received if he or she had been representing a
> paying client who was billed by the hour in a comparable case.
> Second, the lodestar method is readily administrable, and unlike
> the *Johnson* approach, the lodestar calculation is "objective," and
> thus cabins the discretion of trial judges, permits meaningful
> judicial review, and produces reasonably predictable results.

*Perdue*, 559 U.S. at 551-52 (internal citations and quotation marks omitted). The Supreme Court

has established a "strong presumption" that the lodestar amount represents a "reasonable" fee in

the context of a fee-shifting statute like the FLSA:

> The lodestar figure has, as its name suggests, become the guiding
> light of our fee-shifting jurisprudence. We have established a
> strong presumption that the lodestar represents the reasonable fee,
> and have placed upon the fee applicant who seeks more than that
> the burden of showing that such an adjustment is necessary to the
> determination of a reasonable fee.

*City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citing *Pennsylvania v. Delaware Valley*

*Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 898

(1984) (internal citations and quotation marks omitted)).

8

Case No. 14-3788, *Dean v. F.P. Allega Concrete Construction Corp.*

We have recognized that additional factors like those in *Johnson* aid a district court in adjusting its calculation of attorney fees after establishing its lodestar baseline. *Lavin*, 764 F.3d at 649. Indeed, as the majority notes, a district court properly proceeds to an inquiry beyond the lodestar amount if a party presents specific evidence that the case at bar is rare or exceptional. *Adcock-Ladd*, 227 F.3d at 350 (quoting *Delaware Valley*, 478 U.S. at 565). Allega's brief in opposition to Dean's motion for fees argued that awarding fees would be unfair due to various specific elements of Dean's case, each of which speak to the company's general assertion that Dean's action case does not reflect the ideals behind the FLSA. In *Fegley*, we explained that

> The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here encourages the vindication of congressionally identified policies and rights. Indeed, we have upheld substantial awards of attorney fees even though a plaintiff recovered only nominal damages.

*Fegley*, 19 F.3d at 1134-35 (internal quotation marks and edits omitted). The relationship between damages and fees awarded in a FLSA case, therefore, is complex.

The majority emphasizes the fact that Dean's recovery was just over $100, yet the district court awarded him thousands in attorney fees. Where a district court opts to adjust its lodestar amount, the plaintiff's degree of success on his claims is a key element of that inquiry. *Adcock-Ladd*, 227 F.3d at 349. I believe it is vital to the consistency of this court's FLSA jurisprudence to highlight, however, that the mere existence of a large difference between damages awarded and fees requested does not, by itself, indicate that a district court abused its discretion in conducting the necessary calculations.

Case No. 14-3788, *Dean v. F.P. Allega Concrete Construction Corp.*

The very nature of these cases is likely to yield inconsistent results. The law recognizes that there are no guaranteed results in litigation. Thus, the fact that a plaintiff is only successful on certain claims should not be the sole measure of the amount of the award. That is precisely the reason we defer to the court that oversees a case: that court has an unmatched familiarity with the record, the parties, and the claims at hand, because it has managed the litigation over time. The district court in this case failed to share that critical insight in its opinion. For that reason, I concur in the judgment.